IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2001

**STATE OF TENNESSEE v. MICHAEL RAY SWAN**

**Direct Appeal from the Criminal Court for Sumner County**
**No. 254-1999     Jane Wheatcraft, Judge**

---

**No. M2000-00539-CCA-R3-CD - Filed April 27, 2001**

---

The defendant, Michael Ray Swan, was convicted for simple assault, driving on a revoked, suspended, or cancelled license, and violating the implied consent law. The trial court sentenced the defendant to 11 months, 29 days for the assault; ordered a term of six months on the revoked license conviction; and revoked the defendant's license for one year for violating the implied consent law. In this appeal of right, the defendant presents the following issues: (1) whether there was sufficient evidence to support the convictions; (2) whether the trial court properly charged the jury; (3) whether the trial court erred by allowing the state to submit a statement of evidence; (4) whether the trial court erred by denying defendant's motion to stay the suspension of his license; and (5) whether the trial court erred by revoking the defendant's license. After a review of the record, we reverse and dismiss the conviction for driving on a revoked, suspended, or cancelled license; the judgment for the implied consent violation is modified to a one-year suspension rather than revocation. The conviction for simple assault is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed in Part, Reversed in Part and Remanded.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Ramona P. DeSalvo, Nashville, Tennessee, for the appellant, Michael Ray Swan.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Joe James, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Lytle A. James, Assistant District Attorney.

**OPINION**

On the morning of January 6, 1999, Hendersonville Police Officers Brian Weaks and Bruce Guldeman received information about an erratic driver. Shortly thereafter, the officers located a Ford Ranger truck, which was weaving on a public roadway. When the police signaled for the defendant

to stop, he did not immediately respond. The truck traveled some distance further before stopping at a parking lot in front of an apartment complex. The defendant had two passengers in his vehicle, Shane Decker, who was seated in the middle, and Trey Matthews.

Some of the evidence is disputed. There was no transcript of the trial and the defendant prepared a Statement of Evidence, pursuant to Tennessee Rules of Appellate Procedure 24(c). The state objected to the defendant's statement, primarily because it was in "verbatim" form. Because the trial court lacked sufficient recollection of the facts to determine if the "verbatim" transcript was accurate, it allowed the state to submit its own Statement of Evidence. The defendant then objected, contending that his substantially verbatim recital of evidence was preferable to the state's narrative account. While the trial court stated that its recollection of events more closely reflected the state's account, it ordered both versions to be included in the record on direct appeal.

According to the state's narrative account, the defendant smelled of alcohol and was "extremely belligerent and aggressive" as he walked from his truck. Defense witnesses testified that the defendant had had only one drink earlier in the night. They described the defendant as cooperative with the police. State witnesses testified that the defendant "got in [an officer's] face" and had to be pushed away. According to the investigation report, the defendant "assaulted" Officer Weaks and threatened to "kick [the officer's] ass." The defendant then "charged" at Weaks. During the scuffle, another officer at the scene, Sergeant Jim Lawson, sprayed the defendant with mace. At that point, Officer Weaks maneuvered the defendant to the ground and handcuffed him. Defense witnesses testified that the defendant never made an aggressive move toward Officer Weaks.

The defendant was arrested for DUI and placed in the back of a patrol car. No field sobriety tests were conducted due to the nature of the arrest. Later, Officer Weaks read the implied consent form to the defendant and asked him to take a blood test. The defendant refused and signed the form, although he did not check the box indicating his refusal to take the test. The defendant claimed that the test was never offered. He explained that it was dark outside, that his face was pushed against the trunk of a patrol car, and that an officer had directed his hand to the paper he signed. The defendant contended that he believed he was signing a release of liability form for his truck and was unaware that it was actually an implied consent form.

The narrative offered by the state provided that on the way to the jail, Officer Guldeman[1] testified that the defendant's attitude began to change. He testified that the defendant apologized for his conduct and even complimented Officer Weaks on his "takedown" maneuver. He then made small talk about his experiences as a former police officer. The defendant, however, denied that any conversation took place. After the initial arrest, Officer Weaks testified that he ran a check on the defendant's license and that records indicated a suspension for failure to satisfy a citation.

In the statement of evidence offered by the defense, the testimony of the police officers is virtually the same as that included in the state's narrative except that the account of the defense

---

[1] In the defendant's Statement of Evidence, the officer's last name is spelled Guildeman.

witnesses suggests that the police officers behaved badly. According to the statement, both Decker and Matthews, who remained inside the truck when the defendant walked away from his vehicle, testified that an officer called the defendant "stupid" while searching through his wallet for a driver's license. The defense witnesses maintained that after the defendant objected to being called "stupid," an argument ensued. Decker recalled the demeanor of the officers as being "argumentative" and "very arrogant," and characterized the officers as having given the defendant a "hard time." During the argument, the defendant placed his arms behind his back and told the officers to arrest him if they thought he had done something wrong. According to Decker, there were a few more verbal exchanges before one of the officers suddenly "maced" the defendant in the face. The defendant was then thrown to the ground face first and handcuffed. Matthews testified that he turned around and did not see the defendant get sprayed with mace; he told Decker not to move because an officer had a gun pointed at them. The defendant described Officer Weaks as "cocky and aggressive" and claimed that he never lunged at or charged either officer. He testified that he was talking with Weaks when Officer Guldeman suddenly sprayed mace into his eyes.

The defendant was indicted for DUI, driving on a suspended driver's license, resisting arrest, simple assault, and violating the implied consent law. A jury convicted the defendant of driving on a suspended license and simple assault. The trial court found the defendant guilty of violating the implied consent law. He was found not guilty of DUI and resisting arrest. The trial court imposed a sentence of six months on the suspended license conviction and 11 months, 29 days for the assault conviction, both to be served concurrently. The defendant's license was revoked for one year for violation of the implied consent law.

I

Initially, the defendant challenges the sufficiency of the evidence for his convictions of driving on a revoked, suspended or cancelled license, violating the implied consent law and simple assault.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant

bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

A.    Driving on a Revoked, Suspended or Cancelled License

The defendant argues that the trial court erred by denying his motion for judgment of acquittal because the state had not carried its burden of proving that he had been given prior notice of the suspension, revocation or cancellation of his driver's license. A person is guilty of driving on a suspended, revoked or cancelled license if he drives a motor vehicle on any public highway of the state at a time when the person's privilege to do so is cancelled, suspended or revoked. Tenn. Code Ann. § 55-50-504. The defendant contends that in order to be found guilty of the crime, the license must first be properly suspended under the law as provided in Tenn. Code Ann. § 55-50-502(9). That statute provides that the Department of Safety may suspend a license upon a showing, among other things, "that the licensee":

> Has failed to appear in any court to answer or to satisfy any traffic citation issued for violating any statute regulating traffic. No license shall be suspended pursuant to this subdivision for failure to appear in court on or failure to pay a parking ticket or citation or for a violation of § 55-9-603.[2] Any request from the court for suspension under this subdivision must be submitted to the department of safety within six (6) months of the violation date. No suspension action shall be taken by the department unless such request is made within six (6) months of the violation date. <u>Prior to suspending the license of any person as authorized in this subsection, the department shall notify the licensee in writing of the proposed suspension</u> and, upon the licensee's request, shall afford the licensee an opportunity for a hearing to show that there is an error in the records received by the department; provided, that such request is made within thirty (30) days following the notification of proposed suspension or cancellation. Failure to make such request within the time specified shall without exception constitute a waiver of such right. . . .

Tenn. Code Ann. § 55-50-502(9) (emphasis added).

The department has the burden of proving that it met the statutory license suspension requirements "by its records or other sufficient evidence. . . ." Tenn. Code Ann. § 55-50-502(a). According to the evidence presented at trial, the suspension of the defendant's license arose from a previous traffic citation in Hope, Arkansas. The defendant testified that he paid the citation on October 6, 1997, over a year before his arrest in this case, but that the payment was received late. He stated that he was fined for the late payment, but the citation remained on his record. The defendant testified that he never received notice of the proposed suspension. The state did not offer proof that the department had notified the defendant of the proposed suspension.

---

[2] The statute pertains to the use of seat belts.

It is a prerequisite to conviction for driving on a revoked license that the defendant's driver's license was legally revoked at the time of the alleged crime. State v. Loden, 920 S.W.2d 261 (Tenn. Crim. App. 1995); see also Tenn. Code. Ann. § 55-50-504. Because the defendant's license was suspended due to a failure to pay a traffic citation, he was entitled to notice and an opportunity for a hearing, pursuant to Tenn. Code Ann. § 55-50-502(9). There was simply no evidence presented at trial that the defendant was sent notice concerning the suspension of his driver's license or that he received such notice.

The state contends that because the defendant testified that he moved in July of 1998 and that he failed to notify the Department of Safety of his new address, the conviction should stand. It reasons that the defendant would not have received the notice if it had been sent. In the alternative, the state argues that no notice was needed because the citation occurred in another state.

The statute provides that the Department of Safety is authorized to suspend a license if the licensee committed an offense in another state which if committed in this state would be grounds for suspension or revocation. Tenn. Code Ann. § 55-50-502(7). It does not, however, relieve the state from the notice requirement when the suspension is based upon the failure to pay a fine for a traffic citation. Tenn. Code. Ann § 55-50-502(9). Under the applicable statute, the requirement is mandatory. Here, the defendant was entitled to notification that the department had suspended his license. Because there was insufficient evidence in either the narrative record provided by the state or the "verbatim" record supplied by the defense that notice had been provided, the conviction is reversed and dismissed.

B.      Implied Consent Law

Next, the defendant contends that the evidence was insufficient to support the trial court's conclusion that he had violated the implied consent law. Because there was contradictory testimony about the circumstances surrounding the reading of the implied consent form, the defendant maintains that the trial court erred by finding that he violated the statute. We disagree.

The statute under which the defendant was convicted provides in part as follows:

Any person who drives any motor vehicle in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55-10-405. . . .

Tenn. Code Ann. § 55-10-406(a)(1).

The statute further requires that any law enforcement officer who requests that a driver submit to an alcohol or drug test must inform the driver that refusal to take such a test will result in a suspension of his driver's license by the court. Tenn Code Ann. § 55-10-406(a)(2). If, after

advised of the consequences, a person refuses to submit to the test, the test will not be given and the person will be charged for violating the statute. Id.

In this instance, Officers Weaks and Guldeman were on patrol in Hendersonville when they received the report of an erratic driver. After finding the vehicle, the officers attempted to make a stop. The defendant, however, kept driving for a few blocks before turning into an apartment complex. State witnesses testified that there was a strong scent of alcohol emanating from the defendant. Officer Weaks testified that he read the implied consent form to the defendant and asked him to take a blood test. He further testified that the defendant refused to take a blood test and signed the implied consent form. Similarly, Officer Guldeman testified that Officer Weaks read the implied consent form to the defendant while they were still in the parking lot of the apartment complex. Even though the officer had failed to check the implied consent form indicating refusal, the trial judge, after hearing all of the proof, accredited the state's witnesses and found that the defendant had been given the opportunity to take a blood test. The trial judge concluded that the defendant had been apprized of the consequences of refusal and had nevertheless refused the opportunity to be examined. The record supports that determination. In our view, the evidence was sufficient to establish that the defendant violated the implied consent law.

C.    Assault

The defendant next contends that there was insufficient evidence to support the conviction for simple assault. We disagree. A person commits assault who (1) intentionally, knowingly or recklessly causes bodily injury to another; (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact that a reasonable person would regard as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101.

Here, state witnesses testified that the defendant "lunged" at Officer Weaks and that he had to be subdued with mace. Officer Weaks testified that he was in fear of physical injury while defense witnesses testified that the defendant never "lunged" at Officer Weaks. The jury, by its guilty verdict, accredited the testimony offered by the state. When viewed in the light most favorable to the state, the evidence presented here was sufficient for a rational jury to find beyond a reasonable doubt that the defendant was guilty of assault. In our view, there was sufficient evidence to support the verdict.

II

Next, the defendant argues that the trial court's instruction for the assault charge was erroneous because the trial court improperly instructed the jury on "recklessly" causing an assault, instead of "knowingly" or "intentionally" causing an assault. He contends that by following the instruction, the jury could have found the defendant guilty based upon a lesser mental state than was required.

-6-

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. "[The] defendant has a constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). Erroneous jury instructions require a reversal unless the error is harmless beyond a reasonable doubt. See Welch v. State, 836 S.W.2d 586 (Tenn. Crim. App. 1992). At the close of the proof, the trial court instructed the jury on simple assault as follows:

Any person who commits an assault upon another is guilty of a crime. For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant caused another to be in reasonable fear of imminent bodily injury; and
(2) that the defendant acted either intentionally, or knowingly.

After instructing the jury on the elements of the offense, the trial court inadvertently included a definition for recklessness:

"Recklessly" means that a person acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the accused person's standpoint.

The trial court specifically charged the jury that the defendant had to have acted intentionally or knowingly in order to be guilty of assault. That instruction was proper. In the context of the entirety of the instructions, there is no reversible error by providing a definition for "recklessly." The trial court included the requisite mental state in the statutory elements for assault. Recklessness was merely included in a series of other definitions in the instructions. In our view, the trial court clearly placed the duty on the jury to conclude that the assault was either intentionally or knowingly made.

The defendant also challenges certain of the instructions for driving on a revoked, cancelled or suspended license. Because the evidence was insufficient to support that conviction, any error during instructions would qualify as moot. See, e.g., State v. Doe, 812 S.W.2d 150 (Tenn. Crim. App. 1991).

Finally, the defendant contends that the trial court erred by not properly handling his request for jury instructions pursuant to Rule 30(a) of the Tennessee Rules of Criminal Procedure. He argues that the trial court provided no opportunity to review, discuss or approve the instructions.

Rule 30(a) provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adversary counsel. The court shall inform counsel of its proposed action upon the requests, and any other portion of the instructions concerning which inquiries are made, prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The court may, in its discretion, entertain requests for instructions at any time before the jury retires to consider its verdict.

Here, the record shows that at the completion of the evidence, the defendant renewed his motion for Judgment of Acquittal on the driving while license is revoked, suspended or cancelled charge. Further, the record shows that the defendant requested and was denied a jury instruction with respect to "notice" as an element of that offense. That issue has been addressed. There is no showing, however, that other written special requests were submitted, denied, or made a part of the record. The appellant has the duty to supply an adequate record. Absent that, this court cannot consider the question.

III

There was no court reporter at the trial. The defendant maintains that the trial court erred by allowing the state to submit its own Statement of Evidence. He contends that, pursuant to Rule 24(e) of the Tennessee Rules of Appellate Procedure, extraordinary circumstances warrant review of the trial court's order.

Tennessee Rules of Appellate Procedure 24(e) states in relevant part:

Correction or Modification of the Record. – [A]ny differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

In this case, the trial court determined that a statement of the evidence was necessary. It had the duty to resolve any differences in the record. For the most part, it chose not to do so. The differences in the record, however, are not so significant as to affect any of the issues presented. The jury reviewed most of the factual issues. Either statement would support its conclusions. The trial

court determined that there was testimony that the defendant had the opportunity to take a blood test and refused to do so. Whether there was a violation of the implied consent law was not a jury question. Such a violation is not a criminal offense and may result only in a suspension of the license. Tenn. Code Ann. § 55-10-406(a)(3); see State v. Smith, 681 S.W.2d 569 (Tenn. Crim. App. 1984). While the trial court should have resolved any differences in the statement in lieu of a transcribed record, the failure to do so in this instance was of no consequence.

IV

Next, the defendant contends that the trial court erred by refusing to stay the suspension of his driver's license pending this appeal. He maintains that he would suffer irreparable harm if the one-year suspension was imposed, because the ruling would be "non-appealable." In essence, he argues that even if he were successful on appeal, his license still would have been suspended.

The implied consent law is applicable regardless of whether the defendant is convicted of driving under the influence. See Tenn. Code Ann. § 55-10-406. In fact, the statute provides that an officer only has to have "reasonable grounds" to believe that a person was driving while under the influence of an intoxicant or drug. Id. Although the defendant was acquitted of the DUI charge, "reasonable grounds" to believe that the defendant was committing the offense did exist. State witnesses testified that the defendant was driving in an erratic manner and that he was aggressive and belligerent after being stopped. They also testified that the defendant had a strong scent of alcohol. Furthermore, there is no provision in Tenn. Code Ann. § 55-10-406 that a judgment be final prior to license suspension. The statute mandates that when a court finds that a driver has violated the provisions of the subsection, it "shall suspend" the license of such driver for 12 months. See Tenn. Code Ann. § 55-10-406(a)(3). The trial court did so at the conclusion of the trial.

The defendant also argues that there is no public policy reason to deny a stay pending appeal, because he was acquitted of the DUI offense and there was no evidence that he endangered other motorists. The statute contains a public policy statement:

(1)     Provide maximum safety for all persons who travel or otherwise use the public highways of the state;
(2)     Deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of the state; and
(3)     Discourage repetition of unlawful acts by individuals against the peace and dignity of this state and its political subdivisions, and to impose the added deprivation of the privilege of operating motor vehicles upon habitual offenders who have been convicted repeatedly of violations of laws involving the operation of motor vehicles.

Tenn. Code Ann. § 55-10-602.

-9-

In State v. Loden, 920 S.W.2d at 264, this court held that an appeal of a DUI conviction did not automatically stay the revocation of the license. While the state argues that Loden applies to these circumstances, the cases are distinguishable on the facts. More importantly, the defendant chose not to file an application for a stay with this court during the pendency of the appeal. Because it is our view that the suspension was proper, the issue is now moot. At this point, it is not necessary to decide whether the trial court erred by refusing a stay.

V

Finally, the defendant maintains that the trial court erred by revoking his license because revocation, as opposed to suspension, is not permissible under Tenn. Code Ann. § 55-10-406 (a)(3). That statute provides that if a trial court finds that a motorist violated the implied consent law, it shall suspend the license for 12 months. On the judgment form for the defendant's conviction for violation of the implied consent law, the trial court noted that the defendant's license was "revoked one year."

Although the words "suspended" and "revoked" are often used interchangeably, they have different meanings. In the chapter addressing driver's licenses, the statute provides the following definitions:

> "Revocation of driver license" means the termination by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the department after the expiration of at least one (1) year after date of revocation.
>
> ***
>
> "Suspension of driver license" means the temporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department. . . .

Tenn. Code Ann. § 55-50-102(42), (47).

Here, it is likely that the trial court intended only to suspend the defendant's driver's license because it followed the term "revoked" with the phrase, "for one year." In any event, that was the extent of its statutory authority. The judgment is, therefore, modified to provide for a one-year suspension. See Tenn. R. Crim. P. 36.

In summary, the conviction for driving on a revoked, suspended, or canceled license is reversed and dismissed. The assault conviction is affirmed. The judgment is amended as to the violation of implied consent conviction so as to provide for a one-year license suspension.

_____
GARY R. WADE, PRESIDING JUDGE