STATE of Tennessee, Appellee,

v.

**Dennie Ray LODEN, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 16, 1995.

Joe H. Walker, Public Defender, Walter B. Johnson, Assistant Public Defender, Harriman, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michelle L. Lehmann, Assistant Attorney General, Criminal Justice Division, Nashville, Charles E. Hawk, District Attorney General, Frank Harvey, Asst. District Attorney General, Kingston, for Appellee.

### OPINION

HAYES, Judge.

The appellant, Dennie Ray Loden, appeals from misdemeanor convictions for driving on a revoked license and carrying a prohibited weapon, entered by the Criminal Court for Roane County. The appellant presents two issues for our review. First, on January, 1, 1993, the date of the appellant's arrest in this case, his appeal of a previous DUI conviction was pending before the court of criminal appeals. The appellant's DUI conviction had resulted in the revocation of his license. The appellant argues that, because his appeal was pending before this court, the revocation of his license was not yet effective and, therefore, he could not be convicted of driving on a revoked license.[1] Second, the appellant contends that, in imposing a sentence upon him for carrying a prohibited weapon, the trial court mistakenly believed that jail time was mandatory.

After reviewing the record, we affirm both the convictions and the sentences imposed.

### I. Factual Background

In the early morning hours of January 1, 1993, Officer Terry Humphreys of the Rockwood Police Department spotted the appellant in his car, leaving a local market in Rockwood. Officer Humphreys knew that the appellant had recently been convicted of driving under the influence[2] and was aware that the law required revocation of the appellant's driver's license following his conviction. Therefore, Humphreys stopped the appellant and asked him to produce a driver's license. When the appellant failed to do so, Humphreys arrested him for driving on a revoked driver's license. A subsequent search of the appellant's person revealed a metal weapon commonly referred to as "brass knuckles."

On June 21, 1993, the Roane County Grand Jury indicted the appellant on one count of driving on a revoked or suspended license and one count of carrying a prohibited weapon.[3] The case proceeded to trial on March 16, 1994. At trial, the state introduced into evidence a certified copy of the judgment in the appellant's DUI case, dated October 19, 1992, providing that the appellant's driver's license was to be revoked on that date for a period of one year. The defense introduced into evidence a copy of the notice of appeal, filed on December 10, 1992, which appealed the appellant's DUI conviction to the Tennessee Court of Criminal Appeals. It is undis-

---

1. The appellant in his brief incorrectly characterizes this issue as one of sufficiency of the evidence. In fact, the principle issue is statutory construction. Who is authorized to revoke the appellant's driver's license, and under what circumstances?

2. Humphreys testified at trial that he was listed as a witness in the appellant's DUI case. However, he conceded that he was never actually present in the courtroom during the trial, nor when the appellant was sentenced. Nevertheless, following the DUI trial, another officer informed Humphreys that the appellant had been convicted.

3. Tenn.Code Ann. § 39–17–1302 (1991) provides that the intentional or knowing possession of "knuckles" is a class A misdemeanor.

puted that the appellant's DUI conviction was on appeal on January 1, 1993.

At the close of the evidence, the jury convicted the appellant on both counts of the indictment and assessed fines of $50.00 and $100.00. The trial court, in turn, imposed two consecutive six month sentences, with all but two days suspended for each offense. The appellant now requests our review of his conviction for driving on a revoked license and the sentence imposed for carrying a prohibited weapon. We address each of these issues in turn.

## II. Driving on a Revoked License
### a. Statutory Construction

██ It is a prerequisite to a conviction under Tenn.Code Ann. § 55–50–504 (Supp. 1994) that the appellant's driver's license was legally revoked prior to the time of the alleged crime. *Veach v. State*, 491 S.W.2d 81, 83 (Tenn.1973). On October 19, 1992, a judgment was entered finding the appellant guilty of driving while intoxicated under Tenn.Code Ann. § 55–10–401 (1993). Tenn.Code Ann. § 55–50–501 (1993) provides:

(a) The department shall forthwith revoke the license of any operator ... upon receiving a record of such operator's ... conviction of any of the following offenses, **when such conviction has become final:**

...

(2) Driving a motor vehicle while under the influence of an intoxicant ...

(Emphasis added). Tenn.Code Ann. § 55–50–503 (1993) further provides:

(a) Whenever any person is convicted of any offense for which this chapter makes mandatory the revocation of the operator's ... license of such person by the department, the court in which such conviction is had shall require the surrender to it of all operator's licenses then held by the person so convicted, and the court shall thereupon forward the same together with a record of such conviction to the department.

. . . . .

(c) For the purpose of this chapter:

(1) **"Conviction" means a final conviction** ...

(Emphasis added). In essence, the appellant contends that a conviction within the meaning of these sections becomes final and a revocation effective only when the appellant has exhausted all direct appellate remedies.

██ First, a term used by the legislature in a statute should be considered in the context of the entire statutory scheme. *State v. Banks*, 875 S.W.2d 303, 308 (Tenn. Crim.App.1993). The legislature has stated that the purposes of the motor vehicle statute are the following:

(1) Provide maximum safety for all persons who travel or otherwise use the public highways of the state;

(2) Deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of the state; and

(3) Discourage repetition of unlawful acts ...

Tenn.Code Ann. § 55–10–602 (1993). Additionally, under Tennessee law, a defendant is presumed guilty after judgment. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). Thus, to allow an individual convicted of and presumed guilty of driving while intoxicated to continue to operate a motor vehicle pending appeal would be inconsistent with the legislature's statement of public policy.[4]

██ Second, even assuming that under sections 55–50–501 and 55–50–503 the Department of Safety is only authorized to revoke a motorist's driver's license once all direct appellate remedies have been exhausted, Tenn.Code Ann. § 55–10–403 (1993) authorizes the court to prohibit a convicted person from driving a motor vehicle in Tennessee for one year. A statute giving a judge the right to prohibit certain individuals from driving motor vehicles for certain periods is not related to nor dependent upon sections giving the Department of Safety the power to grant, revoke, or suspend licenses. *Goats v. State*, 211 Tenn. 249, 364 S.W.2d

---

4. Note, however, that Tenn.Code Ann. § 55–50–502 (1993) authorizes the Department of Safety to **suspend** an individual's license pending appeal.

889, 891–892 (1963). *See also State v. Woodward*, No. 01–C–01–9006–CR00142, 1991 WL 20316 (Tenn.Crim.App. at Nashville, February 21, 1991) (distinguishing the revocation of driving privileges by the court and revocation by the Department of Safety).

■ Unlike sections 55–50–501 and 55–50–503, section 55–10–403 does not include any requirement that a conviction be final prior to revocation of an individual's license. A basic rule of statutory construction is **expressio unius est exclusio alterius**. See *City of Knoxville v. Brown*, 260 S.W.2d 264, 267 (Tenn.1953); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn.1991). Translated, the maxim provides that where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded.

Thus, despite his pending appeal of the judgment revoking his license, the appellant's driver's license was revoked on January 1, 1993, and he could be prosecuted and convicted for driving on that day.

### b. Sufficiency of the Evidence

■ After conviction, a criminal defendant has the burden of demonstrating insufficiency of the evidence. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). The defendant must establish that the evidence presented at trial was so deficient that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); Tenn. R.App.P. 13(e).

■ Moreover, an appellate court may neither reweigh nor reevaluate the evidence when determining its sufficiency. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id. See also State v. Harris*, 839 S.W.2d 54, 75 (Tenn.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

■ The jury had before it ample evidence to convict the appellant of driving on a revoked license. The appellant failed to produce a driver's license when stopped by Officer Humphreys. Moreover, the state introduced a certified copy of the judgment in the appellant's DUI case, providing for the revocation of the appellant's driver's license.

Therefore, we affirm the appellant's conviction for driving on a revoked license.

### III. Carrying a Prohibited Weapon: The Sentence [5]

■ Appellate review of a sentence is *de novo*, with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1990). The presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles of the Criminal Sentencing Reform Act of 1989 and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

The Tennessee Supreme Court recently outlined the procedure for sentencing misdemeanor offenders under the Sentencing Act of 1989:

[T]he Criminal Sentencing Reform Act of 1989 requires three things of trial judges sentencing misdemeanor offenders. First, all misdemeanor offenders must be sentenced in accordance with the principles, purposes, and goals of the Act. It naturally follows, then, that the sentence must be within the penalty provided for the offense. Second, the court must either conduct a

---

**5.** The appellant does not challenge the sufficiency of the evidence in support of his conviction for carrying a prohibited weapon.

sentencing hearing or provide an opportunity for the parties to be heard on the length and manner of service of the sentence. Third, in addition to setting the sentence based on the principles, purposes, and goals of the Act, the court must set a release eligibility percentage which cannot exceed seventy-five percent of the imposed sentence. Alternatively, the court can grant probation immediately or after a period of split or continuous confinement. *State v. Palmer*, 902 S.W.2d 391 (Tenn.1995) (citations omitted). The Sentencing Act provides that in determining the percentage of the sentence to be served by the misdemeanor offender in actual confinement, a court must consider the purposes of the Act, the principles of sentencing, and any enhancing or mitigating factors. Tenn.Code Ann. § 40–35–302(d) (Supp.1994). *See also State v. Creasy*, 885 S.W.2d 829, 833 (Tenn.Crim.App. 1994).

A primary goal of the Sentencing Reform Act is that the "sentence imposed should be no greater than that deserved for the offense committed." Tenn.Code Ann. § 40–35–103(2) (1990). *See also* Tenn.Code Ann. § 40–35–102(1) (Supp.1994). The Act also mandates that the sentence imposed "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn.Code Ann. § 40–35–103(4) (1990). Finally, "[t]he potential or lack of potential for the rehabilitation or treatment of the [appellant] should be considered in determining the sentence alternative or length of a term to be imposed." Tenn.Code Ann. § 40–35–103(5) (1990).

 The appellant was convicted of carrying a prohibited weapon, a class A misdemeanor under Tenn.Code Ann. § 39–17–1302 (1991).[6] Under the Sentencing Act, the authorized term of imprisonment for a class A misdemeanor is "not greater than eleven (11) months twenty-nine (29) days." Tenn.Code. Ann. § 40–35–111(e)(1) (1990). The trial judge sentenced the appellant to "six months in the Roane County Jail . . . and a mandatory service of time of two days . . ."

 The record does not reveal that the trial judge considered the principles, purposes, and goals of the Sentencing Act in imposing the sentences. Moreover, the trial judge failed to note the presence or absence of mitigating or enhancing factors in imposing a period of incarceration. Although in misdemeanor cases we have not required that trial judges explicitly list on the record applicable enhancing and mitigating factors, *State v. Baggett*, No. 03C01–9401–CR–00031, 1995 WL 406950 (Tenn.Crim.App. at Knoxville, July 11, 1995), clearly a discussion of those factors would be the better practice for purposes of appellate review. Finally, it would appear, from the trial court's use of the word "mandatory", that the trial judge mistakenly believed that a conviction for carrying a prohibited weapon carried with it a minimum sentence of two days incarceration. Therefore, this court must review the appellant's sentence *de novo*. *See Ashby*, 823 S.W.2d at 169. Nevertheless, even when the presumption of correctness "falls," the burden of showing that the sentence is improper rests with the appellant. *State v. Lee*, No. 03C01–9308–CR–00275, 1995 WL 152553 (Tenn.Crim.App. April 4, 1995).

With respect to mitigating or enhancing factors, the appellant was initially stopped by Officer Humphreys precisely because he was in violation of a court order resulting from the appellant's conviction for driving under the influence of an intoxicant. Thus, the appellant has demonstrated unwillingness to comply with the conditions of a prior sentence and disrespect for the laws of the state. *See* Tenn.Code Ann. § 40–35–114(8) (Supp. 1994). This Court finds no mitigating factors. Tenn.Code Ann. § 40–35–113 (1990). Given the facts and circumstances of this case, we conclude that the period of incarceration imposed for carrying a prohibited weapon is in accordance with the principles, purposes, and goals of the Sentencing Reform Act. Accordingly, we affirm the appellant's sentence.

---

**6.** We note that the judgment of conviction erroneously reflects that the offense of carrying a

prohibited weapon is a class B misdemeanor.

## IV. Conclusion and Disposition

For the reasons discussed, the judgment of the trial court is affirmed.

WELLES, J., and TURNBULL, Special Judge, concur.