# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 18, 2010

## STATE OF TENNESSEE v. CAMILLE KRISTINE CHESNEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3008     Mark J. Fishburn, Judge**

---

**No. M2009-01832-CCA-R3-CD - Filed March 24, 2011**

---

A Davidson County Criminal Court jury convicted the appellant, Camille Kristine Chesney, of facilitation to sell .5 grams or more of cocaine, a Schedule II controlled substance, and driving on a suspended license. After a sentencing hearing, the trial court sentenced her to concurrent sentences of four years for the facilitation to sell cocaine conviction and eleven months, twenty-nine days for the driving on a revoked license conviction, to be served as ninety days in jail and the remainder on supervised probation. She also was fined three thousand five hundred dollars. On appeal, the appellant contends that the trial court erred by denying her motion to suppress evidence obtained as a result of an illegal stop and arrest and that the evidence is insufficient to support the convictions. Based upon the record and the parties' briefs, we affirm the appellant's conviction for facilitation to sell cocaine but reverse the conviction for driving on a suspended license.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part and Reversed in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Jeffrey A. DeVasher and Lisa D'Souza (on appeal) and Rodney Caldwell and Laura C. Dykes (at trial), Nashville, Tennessee, for the appellant, Camille Kristine Chesney.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jeff Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# I. Factual Background

Metropolitan Nashville Police Detective Jean McCormack testified that on May 25, 2007, she was the lead investigator in an undercover drug operation conducted by the north Crime Suppression Unit. Detective McCormack, Sergeant Brink Fidler, Detective Kenneth Bray, Detective Matthew Valiquette, and a female confidential informant (CI) went to 524 East Marthona Road, planning for the CI to purchase one hundred dollars worth of cocaine from an African-American male known as "Hollywood." Detective McCormack searched the CI and equipped her with an electronic listening device that allowed Detective McCormack to hear the CI's conversations. Detective McCormack also gave the CI one hundred dollars of previously photocopied "buy money." About 8:00 p.m., the CI got out of Detective McCormack's police vehicle and went inside the home. Detective McCormack said that Detective Bray was hiding in some bushes in order to get a better view of the home's back door, that Detective Valiquette was sitting in his unmarked patrol car, and that Sergeant Fidler was sitting with her in her police vehicle.

Detective McCormack testified that the CI made contact inside the home with Valerie McDougle, Hollywood's mother, and that she could hear "phone calls were being made." However, she could not hear the telephone conversations. About fifteen minutes later, a GMC Yukon, being driven by the appellant, pulled into the driveway. Detective McCormack saw Valerie McDougle come out of the house and walk to the driver's door. Detective McCormack said, "There was a short, quick exchange . . . I could not see any hand-to-hand transaction, but contact was made between the two." Valerie McDougle then went back inside the house, and the appellant drove away. Sergeant Fidler and Detective Valiquette followed the appellant. Detective McCormack stated that she did not know of anyone in the house other than Valerie McDougle and that no one other than the appellant arrived at the home.

Detective McCormack testified that two or three minutes later, the CI came out of the house, got back into Detective McCormack's vehicle, and gave her a yellowish rock. Detective McDougle dropped off the CI and drove to 4313 Falling Leaf Lane, where Sergeant Fidler and Detective Valiquette had stopped the Yukon. When Detective McCormack arrived, the officers already had the appellant in custody. Detective McCormack saw the one hundred dollars of buy money lying on the front seat of the Yukon, and she read Miranda warnings to the appellant. The appellant told Detective McCormack that she had received a call from a woman named Crystal Lianos. According to the appellant, Lianos asked the appellant for a favor and gave the appellant cocaine to sell. McCormack stated that the appellant said she "did something stupid trying to do a favor for a friend." McCormack tried to find out information about Lianos, but a computer check did not find

anyone by that name. McCormack also ran a computer check of the appellant's driver's license, which showed the license had been suspended.

On cross-examination, Detective McCormack testified that the CI was paid for her work in this case. Officer Bray could see the back of the McDougle home, and the other officers could see the front. Detective McCormack acknowledged that she did not know who Valerie McDougle telephoned and that she could not hear McDougle's telephone conversations. She saw McDougle come out of the home and walk to the Yukon. She saw McDougle and the appellant talking, but she did not see an exchange. She acknowledged that the area was dark. Detective Valiquette and Sergeant Fidler followed the appellant's Yukon in their own police cars, and each one could hear the CI's wire. Detective McCormack acknowledged that in an affidavit of complaint she prepared about two hours after the appellant's arrest, she did not mention the appellant's statements.

Metropolitan Nashville Police Detective Matthew Valiquette testified that on May 25, 2007, he participated in an undercover drug investigation at a home on East Marthona Road. Detective Valiquette was sitting in his unmarked patrol car and was too far away from the home to hear information over the CI's electronic wire. At some point, a white Yukon arrived at the residence. When it left, Detective Valiquette and Sergeant Brink Fidler followed in their patrol cars. The Yukon drove about five miles and stopped at 4313 Falling Leaf Lane. Sergeant Fidler, who was driving directly behind the Yukon, pulled in behind it and activated his patrol car's emergency equipment. Detective Valiquette pulled in beside Sergeant Fidler, and Sergeant Fidler took the appellant into custody. Detective Valiquette searched the Yukon and found the buy money between the driver's door and the driver's seat. He put the money on the seat and ran a computer check on the appellant's driver's license, which revealed it had been suspended. On cross-examination, Detective Valiquette testified that he could not see the front door of the McDougle home from where he was parked on East Marthona and that he did not see any vehicles other than the Yukon arrive at the home.

William Stanton, Jr., testified that he was a forensic scientist with the Tennessee Bureau of Investigation (TBI) Crime Laboratory and tested the evidence Detective McCormack received from the CI. The evidence was cocaine and weighed .9 grams.

The appellant had been charged with selling .5 grams or more of cocaine, a Class B felony, and driving on a suspended license, a Class A misdemeanor. The jury convicted her of the lesser-included offense of facilitation to sell .5 grams or more of cocaine, a Class C felony, and driving on a suspended license. After a sentencing hearing, the trial court sentenced her to concurrent sentences of four years for the facilitation to sell conviction and eleven months, twenty-nine days for the driving on a suspended license conviction to be served as ninety days in jail and the remainder on supervised probation. On appeal, the

appellant contends that the trial court should have granted her motion to suppress evidence that the officers found when they stopped her on Falling Leaf Lane and that the evidence is insufficient to support her convictions.

## II. Analysis

### A. Motion to Suppress

The appellant contends that the trial court should have granted her pretrial motion to suppress evidence because the police lacked reasonable suspicion to stop her vehicle and lacked probable cause for her arrest. The State contends that the trial court properly denied the motion. We agree with the State.

Before trial, the appellant filed a motion to suppress evidence recovered as a result of her vehicle stop, arguing that the police did not have probable cause to arrest her. At the suppression hearing, Detective McCormack testified that on May 25, 2007, she and other officers were involved in an undercover drug buy at 524 East Marthona Road. The officers were targeting Marcus Evonne McDougle, nicknamed "Hollywood." Detective McCormack was working with a CI, who was wired with a listening device. The officers gave the CI money that had been photocopied, and the CI went into the home in an attempt to buy cocaine from McDougle. McDougle was not there, but the CI spoke with his mother, Valerie McDougle. Valerie McDougle tried to contact her son, but either she was unable to get in touch with him or he could not come home. Detective McCormack said she heard Valerie McDougle tell the CI that she did not have any cocaine to sell and heard McDougle make several more telephone calls. The detective said, "I didn't know who she was calling or anything like that. But they were attempting to obtain crack cocaine." After Valerie McDougle placed the calls, a vehicle pulled up to the home. Valerie McDougle went outside and spoke with the driver, who was the appellant. Detective McCormack could not hear their conversation, which lasted less than one minute. The appellant drove away, and Valerie McDougle went back inside the house. The CI bought crack cocaine from McDougle, left the McDougle home, and delivered the cocaine to Detective McCormack. Detective McCormack said the cocaine weighed about 1.1 grams.

Detective McCormack testified that Detective Valiquette and Sergeant Fidler followed the appellant's vehicle and that she gave them the "takedown" signal. Detective McCormack drove to 4313 Falling Leaf Lane, where the officers had stopped the appellant and taken her into custody. Detective McCormack gave the appellant Miranda warnings, identified herself, and explained what was happening. The money that Detective McCormack had given to the CI was lying on the front seat of the appellant's vehicle, and the appellant told the detective that she got the cocaine from a woman named Crystal Lianos. Detective McCormack said

she arrested the appellant and charged her with selling a controlled substance and driving on a suspended license. Valerie McDougle was never charged with a crime.

On cross-examination, Detective McCormack testified that she searched the CI before the CI went into the McDougle residence. Detective McCormack did not know how many other people were inside the home, and the CI's conversation with Valerie McDougle was not recorded. Detective McCormack said that the drug buy took place at night and that the area outside the home was dark. She acknowledged that when Valerie McDougle went out to the appellant's vehicle, she could not tell what, if anything, the appellant gave to McDougle. When McDougle went back inside the residence, Detective McCormack heard her give the cocaine to the CI. The CI thanked McDougle and took the cocaine directly to the detective. Meanwhile, Detective Valiquette and Sergeant Fidler were following the appellant's vehicle. Detective McCormack asked the CI some questions and told the officers over the police radio that "it was a good deal."

Detective McCormack testified that she drove to the officers' location. When she arrived, she saw that they had stopped the appellant's vehicle and taken the appellant into custody. Detective McCormack saw the buy money in the appellant's vehicle and read the appellant <u>Miranda</u> warnings. The appellant was cooperative and told the detective she had obtained the cocaine from a woman named Crystal Lianos. Detective McCormack then summarized what led her to believe the appellant had delivered cocaine to Valerie McDougle, stating,

> Conversations over the wire with the CI that the vehicle is here, the timeliness of the arrival, the actions of Ms. [McDougle], the return of the CI to me exactly after the Chesney vehicle left. Through the course of the delineation that's what led me to believe.

Detective McCormack stated that Valerie McDougle was not arrested because "I wanted to continue my investigation from there and hopefully obtain her son."

Detective Valiquette testified that on the night of May 25, he participated in the undercover drug buy and was assigned to follow the suspect vehicle from the McDougle residence. The appellant's white Yukon arrived at the home, and Detective Valiquette was informed over his police radio that someone in the Yukon was suspected to be making a drug delivery. The Yukon drove away from the residence, and Detective Valiquette and Sergeant Fidler followed it. Detective McCormack stated over the radio that "it was a good deal," which was the takedown signal. The officers followed the Yukon to 4313 Falling Leaf Lane and stopped it in the driveway. Sergeant Fidler went to the driver's side and took the

appellant into custody. Detective Valiquette saw two small children in the backseat and what appeared to be crack cocaine crumbs in the center console area. Detective Valiquette field-tested the crumbs, and they tested positive for cocaine. He also found the previously photocopied drug money between the seat and the door jam. Detective Valiquette did not Mirandize the appellant or question her. When Detective McCormack arrived a few minutes later, she checked the appellant's driver's license and discovered it was suspended.

On cross-examination, Detective Valiquette testified that after he and Sergeant Fidler stopped the appellant's Yukon, Sergeant Fidler removed the appellant from the vehicle and handcuffed her. Detective Valiquette acknowledged that the crack cocaine crumbs were in plain view on the center console.

In a written order, the trial court concluded that Detective McCormack's receiving cocaine from the CI gave the officers probable cause to stop the appellant and conduct a search of her vehicle incident to her arrest. On appeal, the appellant contends that the trial court erred by denying her motion to suppress because the officers did not have reasonable suspicion for the vehicle stop or probable cause for the arrest. The State contends that the trial court properly denied the motion. We agree with the State.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001).

Both the Fourth Amendment to the United States Constitution and article 1, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures by law enforcement officers. These constitutional provisions "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (quoting State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997)); see also State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). In relation to the Fourth Amendment, our courts have recognized three distinct types of interactions between law enforcement and the citizenry, namely "(1) a full scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification." State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000) (citations omitted). Our supreme court has explained that "'[o]nly when the officer, by means of physical force or show of authority,

has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

We note that as part of her argument, the appellant contends that the officers did not have reasonable suspicion to stop her vehicle. However, the evidence established that the officers stopped the appellant's Yukon for the purpose of placing her under arrest. Therefore, this was not a brief investigatory stop that had to be supported by reasonable suspicion but a full-blown arrest that had to be supported by probable cause. See Downey, 945 S.W.2d at 106.

Tennessee Code Annotated section 40-7-103(a)(3) provides that an officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony." "Our courts make little, if any, distinction between the terms 'reasonable cause' and 'probable cause' in determining whether there exists a basis for an arrest." State v. Herbert Lee Massey, No. 01C01-9406-CR-00218, 1995 Tenn. Crim. App. LEXIS 736, at **9-10 (Nashville, Sept. 1, 1995). "Whether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" Downey, 945 S.W.2d at 106 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). In the instant case, crack cocaine in an amount greater than .5 grams was sold to the CI. Therefore, our next inquiry is whether the police had probable cause to believe that the appellant facilitated commission of the offense.

The appellant argues that the facts of this case are similar to those in State v. Phillip Francis Morales, No. E2001-01768-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 501 (Knoxville, June 5, 2003). In Morales, the police executed a search warrant at 1747 Forest Hill Road, where the defendant lived with his girlfriend. Id. at *3. As a result of the search, the officers obtained drugs and weapons. Id. In the affidavit to obtain the warrant, an investigating officer had stated that he had seen another suspect leave a home during a drug deal, go to 1747 Forest Hill Road, stay for a short period of time, and return to the first home where the suspect completed the drug deal with a confidential informant. Id. at **8-9. This court stated, "While this behavior may be curious, it does not rise to the level of establishing a basis of knowledge to support a probable cause finding to search . . . the defendant's residence." Id. at *20. However, this court noted that if the affiant had referred to seeing drugs or overhearing a conversation about drugs, probable cause for the search warrant may have been established. Id. at *20 n.5.

This case is distinguishable from Morales. Unlike the facts in Morales, Detective McCormack heard Valerie McDougle tell the CI that McDougle did not have any cocaine

to sell. The detective also heard McDougle make telephone calls to obtain cocaine for the CI. Shortly thereafter, the appellant pulled up to the home. McDougle went outside, talked briefly with the appellant, went back into the home, and sold the CI one hundred dollars worth of cocaine. This evidence established probable cause for the officers to believe the appellant sold cocaine to Valerie McDougle. Therefore, the officers had probable cause to arrest the appellant, and the trial court properly denied her motion to suppress.

## B. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support the convictions. Regarding her conviction for facilitation to sell .5 grams or more of cocaine, the appellant contends that the evidence does not exclude the reasonable hypothesis that someone else provided the cocaine to Valerie McDougle. As to her conviction for driving on a suspended license, she contends that the evidence is insufficient because the State presented no documentary evidence that her license had been suspended or offer any reason why it had been suspended. The State argues that the evidence is sufficient. We conclude that the evidence is sufficient to support the facilitation to sell cocaine conviction but insufficient to support the conviction for driving on a suspended license.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury convicted the appellant of facilitation to sell knowingly .5 grams or more of a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-417(a)(3). "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2) the person knowingly furnishes substantial assistance in the commission of the

felony." Tenn. Code Ann. § 39-11-403(a). Facilitation to sell knowingly .5 grams or more of cocaine is a Class C felony. See Tenn Code Ann. §§ 39-11-403(b), -417(c)(1).

Taken in the light most favorable to the State, the evidence established that the police gave the CI one hundred dollars to buy cocaine from "Hollywood" and that the CI went into the McDougal residence. Hollywood was not present, so the informant spoke with his mother, Valerie McDougal. Valerie McDougal told the informant that she did not have any drugs to sell but began making telephone calls while the informant waited in the home. About fifteen minutes later, the appellant's Yukon pulled into the driveway. Valerie McDougal went outside and spoke with the appellant briefly. McDougal went back inside her residence, and the appellant drove away. Two to three minutes later, the informant came out of the home without the buy money but with crack cocaine that weighed 0.9 grams. The informant immediately delivered the cocaine to Detective McCormack, and the detective gave the takedown signal to officers who were following the appellant. The officers stopped the appellant and arrested her, and one of the officers found the buy money between the front seat and the door. When Detective McCormack arrived at the scene, the appellant claimed she had sold the cocaine as a favor for a friend. Based upon this evidence, the jury could reasonably conclude that the appellant sold the cocaine to Valerie McDougal, who in turn sold it to the CI. The evidence is sufficient to support the conviction for facilitation to sell .5 grams or more of cocaine.

Regarding the conviction for driving on a suspended license, the appellant contends that the evidence is insufficient because the State failed to introduce documentary evidence establishing that her license was suspended and failed to offer any reason why her license had been suspended. Pursuant to Tennessee Code Annotated section 55-50-504(a)(1), a person is guilty of driving on a cancelled, suspended, or revoked license if the person drives a motor vehicle on any public highway of the state at a time when his or her privilege to do so is cancelled, suspended, or revoked. The proof must show that the defendant's driver's license was legally suspended at the time of the alleged crime. See State v. Loden, 920 S.W.2d 261 (Tenn. Crim. App. 1995).

In State v. Billy Joe Phillips, No. E1999-00542-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 350, at *1 (Knoxville, May 11, 2001), the defendant was convicted of driving on a revoked license. At trial, the arresting officer testified that he used the defendant's birth date and social security number to determine that the defendant's driver's license was suspended. Id. at **7-8. However, the officer never testified about whom he called in order to check the status of the appellant's license and never testified that he was able to determine the defendant's license was suspended or revoked at the time of the defendant's arrest. Id. at *8. This court stated, "We are at a loss to understand why the State failed to offer documentation from the Tennessee Department of Safety, particularly, a certified copy of the defendant's

'OFFICIAL DRIVER RECORD.'  Such evidence would have been sufficient to prove the defendant's revocation status."  Id. at **8-9 (citing State v. Donnie Ray Sisk, No. 01C01-9803-CC-00143, 1999 Tenn. Crim. App. LEXIS 463, at *5 (Nashville, May 12, 1999)).  The court concluded that "more was necessary for the officer's testimony to establish beyond a reasonable doubt that the defendant was driving while his driving privileges were suspended or revoked."  Id. at *9.

In this case, the only proof the State presented regarding the suspension of the appellant's driver's license came from the testimony of Detectives McCormack and Valiquette who stated that they ran computer checks on the appellant's license and that the checks revealed her license was suspended.  The issue was not mentioned again by either party until the State's rebuttal closing argument when the prosecutor said, "There's no question that she drove on a suspended driver's license.  We really haven't discussed that."

As in Phillips, we too are puzzled as to why the State did not introduce a certified copy of the appellant's driving record or question the officers further as to how they were able to ascertain that her license was suspended at the time of her arrest.  We note that our review of the record reveals that the appellant actually was indicted for third offense driving on a cancelled, suspended, or revoked license and that the charged offense handwritten on the judgment of conviction form even states, "Driving on revoked D.L. - priors."  In short, the State's prosecution of the appellant for this offense was cursory, at best.  We conclude that the officer's limited testimony alone was insufficient to sustain the conviction for driving on a revoked license in this case.  Therefore, the conviction is reversed.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the appellant's conviction for facilitation to sell a controlled substance but reverse the conviction for driving on a revoked license and dismiss that charge.

_____
NORMA McGEE OGLE, JUDGE

-10-