# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 24, 2011 at Knoxville

## STATE OF TENNESSEE v. RICHARD E. BROWN, JR.

### Appeal from the Circuit Court for Williamson County
### No. II-CR074256    Timothy L. Easter, Judge

### No. M2010-01945-CCA-R3-CD - Filed September 8, 2011

Following a bench trial, the Defendant, Richard E. Brown, Jr., was convicted of one count of driving on a revoked license. See Tenn. Code Ann. § 55-50-504. In this appeal as of right, the Defendant contends (1) that the trial court improperly found him guilty of driving on a revoked license when the indictment charged him with driving on a suspended license; (2) that he could not be convicted of driving on a revoked license because the Department of Safety never revoked his license; and (3) that he did not effectively waive his right to a jury trial. Following our review, we conclude that the Defendant's driver's license had not been revoked, as the term is defined in Tennessee Code Annotated section 55-50-102, prior to the alleged criminal act. Accordingly, we reverse and dismiss the Defendant's conviction for driving on a revoked license.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Dismissed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Richard E. Brown, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Derek K. Smith, Deputy District Attorney General, for the appellee, State of Tennessee.

## OPINION

The record reflects that on March 5, 2008, the Defendant was convicted by a jury of one count of driving under the influence (DUI), second offense. The Defendant was

sentenced on September 15, 2008, and surrendered his driver's license to the trial court at the conclusion of the sentencing hearing. On the judgment, the trial court listed "2 year license suspension" as a special condition of the Defendant's sentence. On October 9, 2008, Assistant District Attorney General Kelly Lawrence observed the Defendant driving. The Defendant was arrested later that day and subsequently indicted on one count of driving while his license was canceled, suspended, or revoked and one count of driving while his license was canceled, suspended, or revoked with a prior DUI conviction. After the Defendant's arrest, the Defendant appealed his DUI conviction. An employee of the court clerk's office returned the Defendant's driver's license to him when he filed his notice of appeal.

On March 23 and May 3, 2010, the trial court held a bench trial in this matter. The State and the Defendant stipulated to the following facts:

1. The defendant was convicted of Driving Under the Influence on March 5, 2008, and sentence imposed on September 15, 2008, and under special condition on the judgment was entered "2 year license suspension."

2. General Kelly Lawrence observed the defendant driving on October 9, 2008, and caused an arrest warrant to issue for Driving on a Suspended License, and the defendant was taken into custody pursuant to that warrant.

3. The defendant was indicted for Driving on a Suspended License on July 13, 2009.

4. The Department of Safety shows no formal action suspending the defendant's license from March 5, 2008 to present and shows that [the defendant] had and still has a valid license.

5. The trial court took [the defendant's] license after conviction for the DUI second offense referenced above.

6. The clerk's office returned the license to [the defendant].

Based upon these facts, the trial court convicted the Defendant of driving while his license was revoked with a prior DUI conviction. On September 8, 2010, the trial court sentenced the Defendant to six months, with all but two days to be served on probation.

ANALYSIS

## I. Driving on a Revoked License

### A. The Indictment

The Defendant contends that the trial court improperly found him guilty of driving on a revoked license when the indictment charged him with driving on a suspended license. The State responds that the indictment properly charged the Defendant with driving on a canceled, suspended, or revoked license.

The statutes regarding driving prohibition, license suspension, and license revocation as the result of a DUI conviction present courts with a Gordian Knot of statutory interpretation. We begin by noting that some prosecutors, defense counsel, and courts continue to use the terms "suspension" and "revocation" interchangeably. As this court has previously instructed, these terms have unique meanings and should not be used interchangeably. See State v. Goodson, 77 S.W.3d 240, 245 (Tenn. Crim. App. 2001); State v. Cathy R. Rose, No. 03C01-9407-CR-00268, 1996 WL 653818, at *2 (Tenn. Crim. App. Nov. 8, 1996). The terms are statutorily defined as follows:

> "Revocation of driver license" means the termination by formal action of [the Department of Safety] of a person's driver license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the department after the expiration of at least one (1) year after the date of revocation.

> "Suspension of driver license" means the temporary withdrawal by formal action of the department of a person's driver license or privilege to operate a motor vehicle on the public highways, which temporary withdrawal shall be for a period specifically designated by the department, not to exceed six (6) months for any first offense, except as provided otherwise under law.

Tenn. Code Ann. §55-50-102(48), (53).[1]

Tennessee Code Annotated section 55-50-504(a)(1) provides that:

---

[1] The statute also defines cancellation of a driver's license as "the annulment or termination by formal action of the department of a person's driver license because of some error or defect in the license or application or because the licensee is no longer entitled to that license." Tenn. Code Ann. § 55-50-102(5).

A person who drives a motor vehicle within the entire width between the boundary lines of every way publicly maintained that is open to the use of the public for purposes of vehicular travel . . . when the person's privilege to do so is cancelled, suspended, or revoked commits a Class B misdemeanor.[2]

The statute provides three different means by which the offense may be committed. Goodson, 77 S.W.3d at 244. Driving on a cancelled, suspended, or revoked license constitute "separate and distinct offenses." Id. Accordingly, when the indictment charges only one means of committing the offense and proof is introduced at trial regarding one of the other means, this constitutes "a constructive amendment of the indictment by broadening the grounds for conviction" and results in reversible error. Id. at 245. However, an indictment may allege alternatively, within the same count, different means of committing an offense. Id. at 244 n.2 (citing Tenn. Code Ann. § 40-13-206). Here, the body of the indictment charged the Defendant of all three means of violating section 55-50-504. Therefore, the State was authorized to prove that the Defendant committed the offense by driving on either a cancelled, suspended, or revoked license. See id. Accordingly, we concluded that the Defendant's contention that he was convicted of a crime not charged in the indictment is without merit.

*B. License Revocation*

The Defendant contends that the trial court erred by convicting him of driving on a revoked license. The Defendant argues that his DUI conviction was not final and therefore could not be the basis for a revocation of his driver's license. The Defendant further argues that because the Department of Safety took no formal action to revoke his driver's license, he cannot be convicted of driving on a revoked license. The State responds that the Defendant's license was revoked when the trial court entered the judgment for the DUI conviction.

Tennessee Code Annotated section 55-50-501(a)(2) mandates that the Department of Safety "shall forthwith revoke the license of any operator or chauffeur upon receiving a record of the operator's or chauffeur's conviction of [DUI] . . ., when the conviction has become final." To that end, Tennessee Code Annotated section 55-50-503(a) provides that

[w]henever any person is convicted of any offense for which this chapter makes mandatory the revocation of the operator's or chauffeur's license of the

---

[2]The statute further provides that a person driving "when the person's privilege to do so is cancelled, suspended or revoked because of a conviction for . . . driving while intoxicated under § 55-10-404 shall be punished by confinement for not less than two (2) days nor more than six (6) months."

person by the department, the court in which the conviction is had shall require the surrender to it of all operator's and chauffeur's licenses then held by the person so convicted, and the court shall thereupon forward the licenses together with a record of the conviction to the department.

The statute defines the term "conviction" as meaning "a final conviction." Tenn. Code Ann. § 55-50-503(c)(1).

This court has previously stated that a conviction is a "final conviction" for purposes of revoking a license even when an appeal of the conviction is pending. State v. Loden, 920 S.W.2d 261, 264-65 (Tenn. Crim. App. 1995); cf. State v. Sneed, 8 S.W.3d 299, 301-02 (Tenn. Crim. App. 1999) (regarding what constitutes a "final conviction" for purposes of determining whether a defendant is a habitual motor vehicle offender). The reasoning is that "to allow an individual convicted of and presumed guilty of driving while intoxicated to continue to operate a motor vehicle pending appeal would be inconsistent with the legislature's statement of public policy." Loden, 920 S.W.2d at 264. Furthermore, the reason for the Department of Safety's revocation of a driver's license "is not to punish the driver but is to protect the general public by removing a potential menace from the highways." Goats v. State, 364 S.W.2d 889, 891 (Tenn. 1963). The revocation "is not a trial or conviction for a criminal act." Id. With these considerations in mind, we conclude that a conviction becomes final for purposes of section 55-50-501 and 55-50-503 when the trial court enters the judgment. At that time, the trial court should require the defendant to surrender his or her license to the court. The trial court should then forward the license along with a copy of the judgment to the Department of Safety as required by section 55-50-503. In this case, however, the trial court never forwarded the Defendant's license and a copy of his conviction to the Department of Safety. In fact, the court clerk eventually returned the license to the Defendant.

The State contends that even though the Department of Safety never revoked the Defendant's license, he could still be convicted of driving on a revoked license because Tennessee Code Annotated section 50-10-403(a)(1)(A)(iv) mandates that trial courts "prohibit" persons convicted of DUI, second offense "from driving a vehicle in this state for a period of time of two (2) years." Section 50-10-403 addresses the fines and penalties for DUI offenses and is located in a separate chapter from the statutes addressing the Department of Safety's powers to cancel, suspend, or revoke a license. The Defendant was indicted with the offense of driving while his privilege to do so was cancelled, suspended, or revoked, which is located in Chapter 50, the Uniform Classified and Commercial Drive License Act. The definitions section of Chapter 50 provides that "[a]s used in this chapter . . . 'Revocation of drive license' means the termination by formal action of the [Department of Safety] of a person's driver license . . . ." Tenn. Code Ann. § 55-50-102(48). It is clear from Chapter 50

of the Motor Vehicle Code that the legislature has placed the power to revoke a driver's license solely within the purview of the Department of Safety. See Tenn. Code Ann. §§ 55-50-102(48), -501(a)(1) (providing that "[t]he department [of safety] shall forthwith revoke the license of any operator" convicted of DUI), -503(a) (requiring the trial court to forward a defendant's license to the department of safety for revocation following conviction for certain offenses). However, the State maintains that section 55-10-403(a)(1)(A)(iv) provides the trial court with the same power to revoke a license as the legislature has granted to the Department of Safety.

Tennessee courts have long recognized that section 55-10-403 does not give trial courts the power to revoke a defendant's driver's license because "[t]hat power is vested in the Department of Safety." Trail v. State, 526 S.W.2d 127, 129 (Tenn. Crim. App. 1974) (citing Wilson v. State, 270 S.W.2d 340 (Tenn. 1954)). This is because the requirement that the trial court "prohibit the convicted person or persons from driving a vehicle in this state for a period of time" found in section 55-10-403(a)(1)(A)(iv) "is a judicial act and it has no relation whatever to the [] sections governing the Department of Safety's power to grant, revoke and suspend licenses." Goats, 364 S.W.2d at 891. In fact, section 50-10-403 itself provides in subsection (e) that "[t]his section shall not be construed . . . to limit the power and authority of the department of safety to revoke or suspend the driver license under chapter 50 of this title." While the trial court is required to prohibit a defendant from driving following a DUI conviction, violating this prohibition is not a criminal act under section 55-50-504. This is because the trial court's prohibition on driving is a separate consequence from the Department of Safety's revocation of the defendant's driver's license.

In essence, the legislature has created two separate and distinct consequences once a defendant is convicted of DUI. The first is an administrative action where the Department of Safety is required to revoke the defendant's driver's license. The purpose of this action is not to punish the defendant, but "to protect the general public by removing a potential menace from the highways." Goats, 364 S.W.2d at 891. Section 50-55-504 makes it a criminal offense for the defendant to drive after the revocation of his license. The second consequence is that the trial court is required to prohibit the defendant from "driving a vehicle in this state for a period of time of two (2) years." Tenn. Code Ann. § 55-10-403(a)(1)(A)(iv). The purpose of this consequence is to punish the defendant for driving while intoxicated.

Typically, a violation of the trial court's prohibition on driving would occur after the Department of Safety has revoked the defendant's license, subjecting the defendant to criminal penalties under section 55-50-504. However, for a violation that occurred during the gap between the entry of judgment and formal action by the Department of Safety or, as in this case, where the trial court never forwarded the license for revocation, the defendant

is not subject to criminal penalties under section 55-50-504. Instead, if the trial court entered a written or verbal order that the defendant is prohibited from driving, the defendant may be found in criminal contempt of court.[3] See State v. Kevin Lee Pennell, No. M2001-01863-CCA-R3-CD, 2003 WL 1960272, at *3-4 (Tenn. Crim. App. April 28, 2003), perm. app. denied (Tenn. Oct. 13, 2003).

The State contends that this court's opinion in Loden stands for the proposition that a trial court's prohibition on driving is the same as a license revocation by the Department of Safety for purposes of section 55-50-504. However, Loden only addressed the issue of whether a conviction is final pending appellate review. 920 S.W.2d at 263. This court relied on section 55-10-403 as proof that the legislature intended a conviction to become final prior to appellate review. Id. at 264-65. Furthermore, unlike the present matter, there is nothing in Loden to suggest that the defendant's license had not been properly revoked by the Department of Safety. Given that the criminal act occurred more than two months after entry of the DUI judgment, it is highly likely that Loden's license had been forwarded to the Department of Safety and revoked. Id. at 263. Therefore, Loden does not address the present issue.

Because driving under the influence is a serious offense which can result in tragic and life-altering consequences for the defendant and innocent victims, we understand the legislature's decision to create two separate and distinct methods of banning a defendant from driving. One is a prohibition on driving issued by the trial court and meant to serve as a punishment for the defendant's DUI conviction. The other is an administrative action revoking the defendant's driver's license and meant to protect the citizens of Tennessee. It is baffling to this court as to why the legislature chose not to include the trial court's prohibition on driving as part of section 55-50-504 in order to criminalize violations of the prohibition. However, the statute is clearly limited to the Department of Safety's power to revoke, suspend, or cancel a license. Because the Defendant's license was never actually revoked by the Department of Safety, he could not have been convicted of driving on a revoked license. Accordingly, we reverse the judgment of the trial court and dismiss the Defendant's conviction for driving on a revoked license.

*II. Waiver of Right to Jury Trial*

Although our determination regarding the preceding issue requires that the Defendant's conviction be dismissed, we will address the remainder of the Defendant's argument so as not to pretermit his remaining issue. See State v. Parris, 236 S.W.3d 173, 189

_____

[3]We also note that the Defendant could have been successfully prosecuted for driving without a license in his possession. See Tenn. Code Ann. § 55-50-351.

(Tenn. Crim. App. 2007) (following a similar procedure). The Defendant contends that he did not effectively waive his right to a jury trial because he never executed a written waiver of the right and he did not orally waive the right in open court. The State responds that the record reflects that the Defendant personally and voluntarily waived his right to a jury trial.

The right to trial by jury is a cornerstone of the American criminal justice system. State v. Ellis, 953 S.W.2d 216, 220 (Tenn. Crim. App. 1997) (citing Duncan v. Louisiana, 391 U.S. 145, 149 (1968)). Under Tennessee law, a defendant may waive this right so long as the waiver is in writing and approved by the trial court and district attorney. Tenn. R. Crim. P. 23. However, "noncompliance with Rule 23's requirement of a written waiver does not ipso facto render a waiver invalid" as long as it is clear from the record that the waiver was "a voluntary relinquishment of the rights to be tried by a common law jury." Ellis, 953 S.W.3d at 221 (quoting State v. Bobo, 814 S.W.2d 353, 359 (Tenn. 1991)) (quotation marks omitted). For a waiver to be effective absent a written waiver, the defendant "must first be advised by the court of his right to a jury trial, and then, must personally waive the right in open court for the record." Id. at 221-22. Because "the right to a jury trial is a right personal to the defendant [it] cannot be waived absent his personal relinquishment of that right." Id. at 221 (citing Taylor v. Illinois, 484 U.S. 400, 418 (1988)). Accordingly, "a judge may not assume that an attorney who waives a jury necessarily invokes the wishes of his clients." Id. (citing United States v. Virginia Erection Corp., 335 F.2d 868, 870 (4th Cir. 1964)).

The record contains no evidence that the Defendant executed a written Rule 23 waiver. Additionally, there is nothing in the record to show that the Defendant orally waived his right to a jury trial.[4] Defense counsel did file a motion to set the case for a bench trial and orally represented that the case was to be tried by the judge. However, statements by counsel are not sufficient to waive a defendant's right to a jury trial. The State asserts that a pro se motion filed by the Defendant on July 20, 2009, constituted a personal and voluntary waiver of the Defendant's right to a jury trial. The motion complained that the Defendant was not given a bench trial at a prior hearing in general sessions court and requested that the general sessions court grant him a bench trial on this matter. It is unclear that this document was even related to this case. The record contains other documents related to the Defendant's underlying DUI conviction and the motion listed a different attorney from the one who represented the Defendant in the present matter. Additionally, the motion requested that "the police officer testify," but the only witness in this case was an Assistant District Attorney

_____

[4]We note that the record indicates there was a pre-trial hearing on November 16, 2009. As a result of the hearing, the trial court ordered the parties to submit stipulated facts and memoranda of law "addressing the issues remaining." A transcript of this hearing was not included as part of the record, and neither party has attempted to supplement the record. However, there is nothing in the record to suggest that the Defendant's waiver of his right to a jury trial was addressed at this hearing.

General. Furthermore, the motion was filed seven days after the indictments were issued. The protections of a written waiver or a personal waiver made in open court are designed to impress upon a defendant "the seriousness of his decision." Ellis, 953 S.W.2d at 222. Accordingly, we cannot conclude that a pro se motion drafted without the assistance of counsel, filed a week after the indictments were issued, and intended for general sessions court instead of the trial court constituted a personal and voluntary waiver of the Defendant's right to a jury trial.

## CONCLUSION

In consideration of the foregoing and the record as a whole, we reverse and dismiss the Defendant's conviction for driving on a revoked license.

_____
D. KELLY THOMAS, JR., JUDGE