# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE
### July 24, 2018 Session

## STATE OF TENNESSEE v. JASON KANE IVEY

**Appeal from the Criminal Court for Knox County**
No. 107008   Steven Wayne Sword, Judge

_____

### No. E2017-02278-CCA-R3-CD
_____

Jason Kane Ivey, Defendant, was convicted following a jury trial of two counts of misdemeanor theft based on alternative theories and one count of Class D felony burglary. The trial court merged the theft conviction in Count 3 into the theft conviction in Count 2 and then merged the theft conviction in Count 2 into the burglary conviction in Count 1 and sentenced Defendant to serve four years as a Range II multiple offender. Defendant claims that his burglary conviction "violated constitutional due process protections" because Tennessee Code Annotated section 39-14-402 is unconstitutionally vague and subsection 39-14-402(a)(3) failed to give him fair warning that his conduct was forbidden by the burglary statute. After a thorough review of the record, the briefs, and applicable law, we hold that Tennessee Code Annotated section 39-14-402 is not unconstitutionally vague and that subsection 39-14-402(a)(3) provided fair warning to a person of common intelligence that a person could be convicted of burglary for committing theft after entering a building open to the public, knowing the owner had revoked its effective consent for the person to enter. We affirm the judgments of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Keith Lowe, Knoxville, Tennessee, for the appellant, Jason Kane Ivey.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

Mark E. Stephens, District Public Defender; and Jonathan Harwell, Assistant District Public Defender, Knoxville, Tennessee, for the *Amicus Curiae*, Knox County Public Defender's Community Law Office.

## OPINION

### PROCEDURAL AND FACTUAL BACKGROUND

On January 26, 2016, the Knox County Grand Jury indicted Defendant for one count of Class D felony burglary and two counts of Class A misdemeanor theft. The first count alleged that Defendant "did unlawfully and knowingly enter a building without the effective consent of the owner, Wal[]mart,[1] and did commit a theft, in violation of T[ennessee] C[ode] A[nnotated] [section] 39-14-402[.]" The second count alleged that Defendant "did unlawfully and knowingly obtain property" in the value of $500.00 or less owned by Walmart, without its effective consent. The third count alleged that Defendant "did unlawfully and knowingly exercise control over property" in the value of $500.00 or less owned by Walmart, without its effective consent.

### May 24, 2016 Jury Trial

Cody Culver, a Walmart employee, encountered Defendant on March 9, 2015, at the Walmart in Clinton. Mr. Culver identified a "Notification of Restriction from Property" ("the first notification") that Defendant signed. The first notification, which was entered as an exhibit at trial, provided:

> Walmart can prohibit individuals from entering its property who interfere with its business, shoplift, destroy property, or otherwise behave in a manner that is unacceptable to Walmart. Walmart has determined you have engaged in conduct sufficient to necessitate limiting your access to Walmart property. This document constitutes formal notice and warning that you are no longer allowed on Walmart property or in any area subject to Walmart's control. This restriction on entry includes, but is not limited to, all Walmart retail locations. Should you elect to ignore this notice and enter Walmart property, Walmart may contact law enforcement and request you be charged with criminal trespass.

The "Acknowledgement of Receipt" section of the first notification provided:

---

[1] We use "Walmart" in this opinion to identify the corporation and stores. The actual corporate entity is Walmart, Inc.

- 2 -

I have read and understand this notice or, in the alternative have had it read to me and understand and acknowledge that as of 9 day of March, 2015[,] I am prohibited from entering Walmart property.  I understand this notice will remain in effect until Walmart rescinds it.

Mr. Culver stated that he wrote and circled the word "life" on the first notification.  He stated that, if Walmart rescinded the ban and gave someone consent to enter upon its property, it would be noted in the APIS system.[2]  He said that, if a person banned from entry into Walmart is recognized in the store by an employee, that person is asked to leave, and if they refuse, Walmart contacts local law enforcement and that person is prosecuted for criminal trespass.  He also identified a picture he took of Defendant in the custody of the Clinton City Police.

Tiffany Ward, an asset protection associate at the Walmart located at 2501 University Commons in Knoxville, testified that she encountered Defendant on May 4, 2015, and that Defendant acknowledged receipt of a second notification, the printed portion of which was identical to the first notification.  The date May 4, 2015, was filled in on the form.  Above the line for the signature of recipient was written: "handcuffed unable to sign."  Handwritten and circled was the word "life."  Defendant was charged with shoplifting from the University Commons Walmart.  He later pleaded guilty to shoplifting and was sentenced to eleven months and twenty-nine days.

On September 22, 2015, Defendant and a female entered the East Towne Walmart location and were observed concealing packages of meat down their pants by Steven Roberts, a Walmart asset protection associate.  Mr. Roberts testified that he stopped Defendant and the female as they were exiting the building.  Mr. Roberts determined from the Walmart APIS database that Defendant was banned from Walmart.  Defendant received a third notification from Mr. Roberts.  Mr. Roberts contacted the Knoxville Police Department, and officers detained Defendant.  A video recorded on various Walmart security cameras was played for the jury.  On cross-examination, Mr. Roberts testified that, if a person banned from Walmart enters the store, he could confront them himself and ask them to leave, or he could contact the police.  He said Walmart did not take measures to screen out people banned from Walmart and did not have a membership card system checking people before they were permitted to enter.

---

[2] The APIS system is not further identified in the record.  We garner from the testimony of Walmart employees that APIS is a database that provides information on individuals who have received a notice that they are prohibited from entering Walmart.

- 3 -

After the close of the State's proof, Defendant recalled Mr. Roberts, who testified that he had previously contacted law enforcement concerning individuals who were banned from entry into Walmart, and the individuals were arrested for criminal trespass.

Defendant testified that he had received a "no trespass notice" from Walmart "on a couple of occasions." He stated that he had been back to Walmart "[q]uite a few [times], but [he] kn[e]w at least three or four times a month, because [he] ha[d] an account set up in Campbell County in the Walmart to send money to [his] [a]unt." He said he had to supply his full name, address, and social security number to Walmart to wire the money to his aunt. He said that he had never been stopped by Walmart while using the wire service or entering a store to shop. Defendant acknowledged that he knew before he entered the Walmart building and stole meat on September 22, 2015, that he was banned by Walmart from entering its property. He also admitted that he had previously pleaded guilty to theft and a drug charge involving "less than a half gram of methamphetamine" in Campbell County. On cross-examination, Defendant agreed that the Schedule II drug offense was a felony, for which he was sentenced to three years. He also agreed that he had two burglary convictions in 2008 and that he was sentenced to two years on each burglary. He was also convicted of misdemeanor theft in Knox County on May 5, 2015, and misdemeanor theft in Anderson County on May 20, 2015. He acknowledged that he knew that he was banned from entering a Walmart for life.

Following deliberations, Defendant was convicted as charged.

**Sentencing Hearing**

A sentencing hearing was held on July 8, 2016. The presentence report, which was entered as an exhibit, showed that Defendant had three felony convictions in Campbell County—one for Schedule II drugs and two for "burglary other than habitation"— and a misdemeanor theft conviction in Knox County concerning the May 4, 2015 incident at Walmart. The report listed arrests in Anderson County for failure to appear, misdemeanor theft, and a probation violation and in Campbell County for domestic violence by assault, possession of Schedule II drugs, and misdemeanor theft. The report stated that no disposition was available for those offenses because records from Anderson and Campbell County had not been received at the time the presentence report was prepared. The report stated that Defendant "was affiliated with Aryan Nation" but that Defendant "reported that he was no longer involved with this gang." The trial court sentenced Defendant to eleven months and twenty-nine days for each theft and four years as a Range II multiple offender for a Class D felony burglary. The sentences were ordered to be served concurrently. The court noted that it was sentencing Defendant to the minimum sentence in the range, but "because of the repeated nature of [Defendant]'s

crimes[,] this is a case that warrants a penitentiary sentence." The court merged the theft convictions into the burglary conviction.[3]

The timely motion for new trial was filed on August 8, 2016, and was argued and denied on October 20, 2017. Defendant filed a notice of appeal on November 20, 2017.

## ANALYSIS

On appeal, Defendant raises a single issue—that his "burglary conviction violates constitutional due process protections." He argues that his "conviction of burglary cannot be sustained as doing so would violate the rights guaranteed him by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Tennessee State Constitution" because "Tennessee Code Annotated section 39-14-402, as it relates to this matter, is unconstitutionally vague and failed to give [Defendant] fair warning that his actions would constitute the offense of burglary."

After being granted leave by this court, *Amicus Curiae* filed a brief raising two questions in support of Defendant:

1. Does an individual commit burglary who, having been previously provided with a notice banning him or her from a retail store, subsequently enters that store at a time when it is open to the public and then shoplifts?

2. Does a retail store "effectively consent" to the entry of individuals, even if that store has previously given them notice to stay out, if it allows them to enter, shop, and conduct legitimate transactions, and checks the database to see if they have been banned only if they are suspected of theft?

---

[3] The trial court properly merged the theft convictions into the burglary conviction. Under Tennessee Code Annotated section 39-14-402(a)(1)(2) and (4), "the crime of burglary is complete when entry has been made [or the person remains] . . . without the owner's consent and with an intent to commit a felony, theft, or assault." *State v. Ralph*, 6 S.W.3d 251, 255 (Tenn. 1999). "Consummation of the intended felony, theft, or assault is not necessary to complete the crime of burglary." *Id.* Therefore, a conviction of theft does not merge into the burglary conviction under these subsections. However, under Tennessee Code Annotated section 39-14-402(a)(3) the crime of burglary is not complete until the person commits or attempts to commit a felony, theft, or assault. Under a double jeopardy analysis, the statutory violations of theft and burglary in this case arose from the same act or transaction. When the elements of the offenses, theft and burglary under -402(a)(3), are compared in the abstract, the elements of theft are fully contained within the elements of burglary under -402(a)(3). *See State v. Watkins*, 362 S.W.3d 530, 545-46 (Tenn. 2012). Accordingly, double jeopardy considerations required the trial court merge the theft convictions into the burglary conviction.

The State argues that Defendant's burglary conviction does not violate due process and is not unconstitutionally vague.

We hold that Tennessee Code Annotated section 39-14-402 is not unconstitutionally vague and that subsection 39-14-402(a)(3) provides fair warning to a person of common intelligence that a person commits burglary if the person enters a building and commits a felony, theft, or assault after the owner revokes its consent for the person to enter. Concerning the first question raised by A*micus Curiae,* we determine that a person can burglarize a building open to the public under subsection 39-14-402(a)(3). Concerning the second question raised by *Amicus Curiae,* we determine that a retail store does not effectively consent to the entry of an individual who has knowledge that his or her consent to enter the store has been revoked simply because that individual enters its store to carry on a commercial activity. A retail store's failure to recognize a banned individual who enters its buildings does not amount to "assent in fact, whether express or apparent," for the banned individual to enter the retail store. *See* Tenn. Code Ann. § 39-11-106(a)(9). The portion of the question stating that the retail store "checks the database to see if they have been banned only if they are suspected of theft" is not supported by the facts of this case, and we will not address that portion of the question.

## Standard of Review

This court reviews constitutional issues de novo. *State v. Merriman*, 410 S.W.3d 779, 791 (Tenn. 2013). Statutory interpretation and the application of a statute to undisputed facts present a question of law, which this court reviews de novo with no presumption of correctness. *Kyle v. Williams*, 98 S.W.3d 661, 663-64 (Tenn. 2003).

## Fair Warning and Vagueness Doctrines

Defendant's due process arguments are grounded in the interrelated doctrines of vagueness and fair warning. The vagueness doctrine is "mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States)." *Welch v. United States*, 136 S. Ct. 1257, 1261-62 (2016). The Tennessee Constitution provides that no person shall be "deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.

In *United States v. Harriss*, 347 U.S. 612, 617, (1954), the United States Supreme Court characterized the fair notice principle as follows:

The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

A criminal statute "must give fair warning of the conduct that it makes a crime[.]" *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). The doctrine of fair warning is closely linked to the doctrine of vagueness. "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally responsible for conduct which [they] could not reasonably understand to be proscribed.'" *State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015) (alteration in original) (quoting *Harriss*, 347 U.S. at 617).

The Tennessee Supreme Court, in a case involving a statute proscribing gambling devices, stated the following about fair warning:

A statute may be void for vagueness if it is not "sufficiently precise to put an individual on notice of prohibited activities." *State v. Wilkins*, 655 S.W.2d 914, 915 (Tenn. 1983). A criminal statute must be construed according to the fair import of its terms when determining if it is vague. *See* Tenn. Code Ann. § 39-11-104 (1989). Due process requires that a statute provide "fair warning" and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed. *Grayned v. City of Rockford*, 408 U.S. 104, [108] . . . (1972); *see also State v. Lyons*, 802 S.W.2d 590, 591 (Tenn. 1990). The fair warning requirement, however, does not demand absolute precision in the drafting of criminal statutes. *See Wilkins*, 655 S.W.2d at 916. . . . In fact, it is the duty of the courts "to adopt a construction which will sustain a statute and avoid constitutional conflict if its recitation permits such a construction." *Lyons*, 802 S.W.2d at 592.

*State v. Burkhart*, 58 S.W.3d 694, 697-98 (Tenn. 2001).

The rule of lenity is related to the doctrine of vagueness and the principle of fair warning. "The rule of lenity is 'rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his or her conduct is prohibited.'" *State v. Hawkins*, 406 S.W.3d 121, 137-138 (Tenn. 2013) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)). Where there is ambiguity in a statue, the rule of lenity requires the ambiguity to be resolved in favor of

the defendant. *State v. Smith*, 436 S.W.3d 751, 768 (Tenn. 2014). The rule of lenity "reflects not merely a convenient maxim of statutory construction" but is based on "fundamental principles of due process[.]" *Dunn v. United States*, 442 U.S. 100, 112 (1979).

A word or phrase is ambiguous if it "can reasonably have more than one meaning[.]" *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). A statute is ambiguous if the language "is susceptible [to] more than one reasonable interpretation[.]" *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001).

### *Tennessee's Burglary Statute*

Perhaps no common law criminal offense has changed as drastically as burglary over the decades. At common law, burglary involved breaking and entering a dwelling place in the night, with the intent to commit a felony. *See Davis v. State*, 43 Tenn. 77, 80 (Tenn. 1866). Today, a person can commit burglary without having to "break" into anything. The common law requirement of "breaking" has been replaced by entering without the owner's effective consent. *See* Tenn. Code Ann. § 39-14-402. The property burglarized no longer has to be a dwelling place, and under modern burglary statutes, the property burglarized no longer even has to be real property. A person can commit burglary of a "freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle." Tenn. Code Ann. § 39-14-402(a)(4). Burglary no longer has to take place at night. Burglary is no longer solely an inchoate crime. Pursuant to Tennessee Code Annotated subsection 39-14-402(a)(3), a person can be convicted of burglary without having the *intent* to commit a felony, theft, or assault at the time the person entered a building.

The crime of burglary is codified at Tennessee Code Annotated section 39-14-402. Subsection (a), which is the part of the statute relevant to this case, was first enacted in 1989 and was last amended in 1995, and provides:

> (a) *A person commits burglary who, without the effective consent of the property owner:*
>
> (1) *Enters a building other than a habitation* (or any portion thereof) *not open to the public*, *with intent to commit* a felony, *theft* or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;

(3) *Enters a building and commits or attempts to commit a* felony, *theft* or assault; or

(4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402(a) (2015) (emphasis added).

Certain words and terms in the burglary statute are defined in title 39 of our Code. "Habitation" is defined as "any structure, including buildings, . . . which is designed or adapted for the overnight accommodations of persons[.]"  Tenn. Code Ann. § 39-14-401(1)(A) (2015).  "Effective consent" is defined in Tennessee Code Annotated subsection 39-11-106(a)(9) as follows:

(9) "Effective consent" means assent in fact, whether express or apparent, including assent by one legally authorized to act for another.  Consent is not effective when:

(A) Induced by deception or coercion;

(B) Given by a person the defendant knows is not authorized to act as an agent;

(C) Given by a person who, by reason of youth, mental disease or defect, or intoxication, is known by the defendant to be unable to make reasonable decisions regarding the subject matter; or

(D) Given solely to detect the commission of an offense[.]

Tenn. Code Ann. § 39-11-106(a)(9) (2015).

When the legislature does not provide a specific definition for a statutory term, this court may look to other sources, including **Black's Law Dictionary**, for guidance. *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007).  Assent has been defined as an "agreement, approval, or permission; esp., verbal or nonverbal conduct reasonably interpreted as willingness." **Black's Law Dictionary** 115-16 (10th ed. 2014).  "Building" is defined as a "structure with walls and a roof, esp. a permanent structure." **Black's Law Dictionary** 194-95 (10th ed. 2014).

### *Fair Warning and Vagueness of § 39-14-402(a)(3)*

Defendant admitted that he entered a building owned by Walmart, knowing that Walmart had revoked its consent for him to enter onto its property, and committed theft. Defendant claims that subsection -402(a)(3), is so vague and ambiguous that he was not provided fair warning that entering a building open to the public without the consent of the owner and committing theft could amount to burglary.

In support of his fair warning arguments, Defendant relied extensively on a law journal article by Jonathan Harwell, *Burglary at Wal-Mart: Innovative Prosecutions of Banned Shoplifters under Tenn. Code Ann. § 39-14-402*, 11 Tenn. J. L. & Pol'y 81 (2016), ("the Harwell article").

Mr. Harwell opined "that the purpose of subsection (a)(3) was an evidentiary one -- to make it easier to prove the case when a defendant was caught red-handed," arguing that "[i]f section (a)(3) was intended to make it easier to prove cases that otherwise would be brought under section (a)(1), then there is no reason for section (a)(3) to cover a different set of structures (entry into buildings open to the public) than section (a)(1) does." *Id.* at 111. This argument misses an obvious evidentiary difference between buildings open to the public and those not open to the public, including habitations. To convict a defendant of burglary under subsection -402(a)(1), the State must prove that a defendant entered a building *with the intent* to commit a felony, theft, or assault. Such intent in most cases can only be proven by circumstantial evidence. *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). Juries can infer intent from the circumstantial evidence, for example, the manner of entry or the fact that valuables are located in a building not open to the public or a residence. *See State v. Ingram*, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) ("In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft."). If, however, the building is open to the public, such as a retail store, it would be very unlikely that circumstantial evidence could establish intent, even if the person entered without the consent of the property owner. Subsection -402(a)(3) eliminates that evidentiary problem when the felony, theft, or assault was committed in a building open to the public.

Mr. Harwell next opined that the word "building" in subsection -402(a)(3) "is merely a shorthand reference" to the phase in subsection -402(a)(1): "building other than a habitation (or any portion thereof) not open to the public." *Harwell*, *supra*, at 88. This interpretation of the word building runs contrary to several rules of statutory construction.

"The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope." *Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52-53 (Tenn. 2018). "In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). When a statute's text is unambiguous, "we need look no further than the language of the statute itself." *Lee Med., Inc.*, 312 S.W.3d at 527. "Only an ambiguity in the language of the statute will permit us to look behind its face to determine the legislature's intent." *State v. Powers*, 101 S.W.3d 383, 393 (Tenn. 2003). "[N]o matter how illuminating [the] non-codified external sources may be, they cannot provide a basis for departing from clear codified statutory provisions. *Id.* at 527. Finally, courts should "refrain from 'speculating about the significance of provisions which are not included in [a] statute,' finding it more effective to 'consider the words actually used.'" *In re C.K.G.*, 173 S.W.3d 714, 723 (Tenn. 2005) (alteration in original) (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)). The legislature chose to use building in subsection -402(a)(3).

The canon of statutory construction *expressio unius est exclusio alterius* provides that "where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded." *State v. Loden*, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995); *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). We will therefore presume that the legislature purposely included the phrase "not open to the public" in subsection -402(a)(1) and purposely excluded the same phrase from subsection -402(a)(3). The same presumption outlined in *Loden* applies to *Amicus Curiae's* claim that, because "other than habitation" applies to section -402(a)(3) without being explicitly stated, "not open to the public" must also apply. Again, we presume that the legislature purposely included "other than a habitation" in subsection -402(a)(1) and purposely excluded "other than a habitation" in subsection -402(a)(3).

Defendant next argues that:

From 1995 to 2015, a period of twenty years, the idea that actions similar to the [Defendant]'s could sustain a burglary conviction apparently never occurred to any of the many District Attorneys or Assistant District Attorneys representing the State of Tennessee. If it did not occur to highly trained legal professionals prior to 2015, then a person of common

- 11 -

intelligence could not be deemed to be placed on notice of the potential consequence.[4]

We are not persuaded by this argument. Simply because a statute has been interpreted in a particular way for a period of time does not bar a new interpretation. The perfect example proving this point is the recent opinion of our supreme court in *State v. Gentry*, in which the court held for the first time that the theft of property statute, Tennessee Code Annotated section 39-14-103, "is broad enough to encompass theft of real property[.]" *State v. Gentry*, 538 S.W.3d 413, 426 (Tenn. 2017). In Tennessee, theft statutes, like burglary statutes, underwent a comprehensive revision in 1989, and our theft and burglary statutes today are substantially similar to the statutes enacted in 1989. The defendant in *Gentry* was indicted in May 2013. *Id.* at 417. Almost twenty-three years elapsed before the Shelby County Grand Jury indicted Gentry for theft of real property, and it took over twenty-six years before our supreme court held that a person could be convicted for the theft of real property under the theft of property statute. Thus, we conclude that section 39-14-402(a)(3) does not violate the fair warning doctrine merely because it has not been consistently applied to the prosecution of burglaries of buildings open to the public when the owner has effectively revoked its consent for the defendant to enter the building.

As stated earlier "building" is defined as "a structure with walls and a roof, esp. a permanent structure." **Black's Law Dictionary** 194-95 (10th ed. 2014). The word building is not a complex legal term, and we "must give" the word "building" its "natural and ordinary meaning." *See Lee Med., Inc.*, 312 S.W.3d at 526. We determine that "building" in subsection -402(a)(3) is not ambiguous and means a structure with walls and a roof.

### *Legislative History*

Although we have determined that subsection -402(a) is not vague and that the word "building" is not ambiguous, we recognize that another panel of this court, in dicta, apparently believed otherwise, although that opinion was vacated on procedural grounds. *See State v. Danielle Chandria Jensen*, No. M2016-01553-CCA-R10-CD, 2017 WL 3671093, at \*10 (Tenn. Crim. App. Aug. 25, 2017) (quoting Harwell, *supra*, at 111-13) ("[T]he drafters of [subsection -402(a)(3)] did not intend for the statute to be (and, indeed, did not realize that it might be) interpreted to cover buildings that are open to the

---

[4] Although we have found no opinions of the supreme court or reported or unreported opinions of this court concerning a burglary conviction based on facts similar to the facts of this case during that twenty-year time period, this court has no way to determine what ideas occurred to District Attorneys or Assistant District Attorneys or even if there have been convictions for burglary based on facts similar to the facts in this case that were never appealed.

public."), *app. granted, judgment vacated* (Tenn. Dec. 8, 2017). For purposes of judicial efficiency, we will address the arguments of the *Amicus Curiae* that the legislative history of the Tennessee burglary statute supports its contention that the Tennessee General Assembly did not intend to criminalize the entry into a building open to the public and subsequent commission of a theft or felony.

*Legislative History of Texas Burglary Statute*

In addition to looking at the plain language of a statute to determine whether the statute provides fair warning, courts also look to the legislative history of a statute to determine whether an application of the statute was intended by the legislators. We will begin by looking at the legislative history of section 39-14-402. The Harwell article traces the origin of the "current Tennessee burglary statute" to a burglary statute enacted in Texas. In the mid 1960's, Texas began a revision of its penal code. According to Mr. Harwell, on November 3, 1967, the Texas Committee on Revision of the Penal Code met to discuss a proposed draft of a burglary statute, which contained a section that did not require intent at the time of entry. Harwell, *supra*, at 89-90. Subsection 221.1(1)(c) of the proposed draft stated that a person is guilty of burglary if "he enters or remains concealed in a building or occupied structure at a time when the building o[r] occupied structure is not open to the public and the actor is not licensed or privileged to enter or remain and *commits or attempts to commit a felony or theft* (THEREIN)." *Id*. at 90 (emphasis added). Subsections (a) and (b) also contained the "not open to the public" language. Subsection 221.1(1)(c) ultimately was "denominated" subsection (a)(3). *Id.* at 94.

In July 1970, "the staff of the [Texas] Penal Code Revision Project sent a memorandum to the [Texas] State Bar Committee [on Revision of the Penal Code] with a variety of suggestions regarding different sections of the proposed draft." *Id.* at 94. Concerning the burglary statute, "staff offered two suggestions:" (1) that "without the owner's effective consent" be substituted for "without license or privilege" and (2) that subsection (a)(3) be deleted. *Id.* Concerning subsection (a)(3), the memorandum stated that "[i]t is not present Texas law, no other revising state has included it, and the staff cannot imagine a single example of its application." *Id.* The State Bar Committee accepted the staff's recommendation substituting "without effective consent" but rejected the recommendation to delete (a)(3). In October 1970, the State Bar Committee issued its proposed final draft which included a section on burglary. *Id* at 94-95. Subsection 30.02 (a) of the draft provided:

> (a) An individual or corporation commits burglary if, without the
> effective consent of the property owner:

(1) he enters a habitation, or a building (or any portion of a building) not open to the public, with intent to commit a felony or theft; or

(2) he remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) he *enters a building* or habitation and *commits or attempts to commit a felony or theft*.

*Id.* at 95 (emphasis added).

Concerning subsections (a)(2) and (a)(3) of the burglary statute, the State Bar Committee offered the following comment:

The concealment feature, Section 30.02(a)(2), is derived from present law, Penal Code arts. 1389. 1391, and covers, for example, one who, with the requisite intent, enters a business while it is open to the public and hides until it closes. Section 30.02(a)(3) includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts a felony or theft. This provision dispenses with the need to prove intent at the time of entry when the actor is caught in the act.

*Id.* at 98.

According to the Harwell article, "[t]here was no explanation, nor indeed any acknowledgment, of the change between the 1967 proposal and this one[:] the removal of the specification that section (a)(2) and section (a)(3), like section (a)(1), applied only to buildings not open to the public." *Id.* Also, according to Mr. Harwell:

A bill was introduced into the Texas legislature encompassing a variation on this proposal. As to burglary, its language was the same as the proposed language with the exception that section (a)(3) was revised to read "a habitation, or a building (or any portion of a building) not open to the public . . . ." This bill died a quick death, however, and was tabled in May 1971, with the legislature instead proposing a committee to "study and educate the public in the proposed revision of the Texas Penal Code . . . ."

*Id.* at 99. In 1974, after a period of study, the burglary statute that included section (a)(3) was enacted. *Id.*

In 1963, the Tennessee Law Revision Commission ("the Commission") was created to consider changes in the penal code. The Commission ultimately "settled on the Proposed Revision of the Texas Penal Code" as the "organizational backbone" of its Proposed Final Draft which was published in November 1973. *Id.* at 100. The Commission's proposal "copied nearly verbatim, the Comments of the Texas proposal." *Id.* at 101. The criminal code was not, however, revised at that time.

In the 1989, the Tennessee General Assembly enacted "comprehensive penal and sentencing reform legislation . . . as proposed by the Tennessee Sentencing Commission [("the Sentencing Commission")]." *State v. Cummings*, 868 S.W.2d 661, 665 (Tenn. Crim. App. 1992). Included in the reform were new criminal statutes governing "offenses against property." Tenn. Code Ann. §§ 39-14-101 to -154. The 1989 version of section -402 was very similar to the current burglary statute, except the 1989 version included "habitation" in subsections -402(a)(1),(2), and (3) and did not include "assault" as an alternative element that can be used to prove burglary. *See* Tenn. Code Ann. § 39-14-402 (1989). The 1989 statute was substantially similar to the Texas burglary statute on which it was modeled.

Attached to the brief of the *Amicus Curiae* is a document titled "Proposed Revised Criminal Code" prepared by the Tennessee Sentencing Commission for the 96th General Assembly which contains several pages of comments. These comments were presented in 1989 and are not codified in the Sentencing Commission Comments currently included after section 39-14-402. Defendant and the *Amicus Curiae* claim that the one of the 1989 proposed comments supports their conclusion that the word "building" in subsection (a)(3) means a building "not open to the public":

> As in the present law, [5] however, one who, with *intent* to commit a felony or theft enters a building open to the public or otherwise has consent to enter, such as a servant or brother-in-law, commits no burglary and can be prosecuted only for the commission or attempted commission of the offense intended, unless the offender remains *concealed* after consent to his or her presence has terminated.

Tennessee Sentencing Commission, Proposed Revised Criminal Code (1989), at 156 (emphasis added). Concerning the above comment, the *Amicus Curiae* argues:

---

[5] The "present law" referred to in the comment was Tennessee Code Annotated sections 39-3-404 (1982) [repealed by Acts of 1989, ch. 591 § 1, effective November 1, 1989]. Under section -39-3-404, burglary in the third-degree was "the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony."

[T]he Comment[] indicate[s] that one who enters a 'building open to the public," without the intent to commit an offense, but who later commits a theft, "commits no burglary" and can only be prosecuted with the substantive theft offense.

That is not what the hypothetical factual pattern set out in the comment indicates at all. Under the fact pattern outlined in the comment, we would agree (1) that the person would not commit burglary under the law in effect before November 1, 1989, because the person did not break and enter into a building, (2) the person would not commit burglary under the current subsection 39-14-402(a)(1) because the person entered with consent or entered a building open to the public, and (3) the person would not commit burglary under the current subsection 39-14-402(a)(3) because the person did not commit or attempt to commit a felony, theft, or assault.

On the same page as the above quoted comment, the following comment appears:

Subsection (a)(3) includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime at the time of the entry, subsequently forms that intent and commits or attempts a felony or theft. This provision dispenses with the need to prove intent at the time of entry.

*Id.* The fact pattern of this comment provides that a person who commits or attempts a felony or theft after entering without the consent of the owner commits burglary. The comment says nothing about the structure being or not being open to the public and therefore supports our conclusion that the legislature did not intend to define "building" in section -404(a)(3) as a building that is not open to the public.

*Amicus Curiae* argues that "[sub]section (a)(3) was apparently intended primarily to solve an evidentiary problem -- why should it be necessary to prove intent at the time of entry (which could be hard to establish beyond a reasonable doubt) when the defendant had gone on to commit the substantive offense?" We agree that this may have been one of the reasons for the inclusion of subsection (a)(3); however, if it was, nowhere is the need to "solve an evidentiary problem" greater than when attempting to prove intent to commit a theft when a person enters a building open to the public. Intent generally has to be proven by circumstantial evidence, for example the manner of entry. *See Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973) (in the absence of an acceptable excuse, a jury can infer intent to commit theft based on illegal entry into a residence or a building in which there is property which is the subject of larceny). It is highly unlikely that walking in the

- 16 -

front door of a retail store would provide circumstantial evidence of intent to commit a theft.

The legislature *chose* to enact a burglary statute containing language that was substantially similar to subsection (a)(3) of the statute enacted in Texas. We presume that the legislature was aware of the fact that the Texas State Bar Committee rejected the recommendation to remove subsection (a)(3) from the final draft of the Texas burglary statute made by the staff of the Texas Penal Code Revision Project. *See Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005) (courts presume that the Tennessee General Assembly knows the state of the law). The legislative history does not support Defendant's and *Amicus Curiae's* claim that the legislature intended to limit subsection -402(a)(3) to buildings not open to the public.

### Revocation of Consent

*Amicus Curiae* claims that the owner of a retail store effectively consents to the entry of individuals previously banned from entering the store if the retail store allows them to enter, shop, and conduct legitimate transactions. We disagree.

In *State v. Ash*, 12 S.W.3d 800, 803 (Tenn. Crim. App. 1999), a criminal trespass case, this court determined that the Clarksville Housing Authority could revoke consent for Mr. Ash to enter its property, which was open to the public. Tennessee Code Annotated subsection 39-14-406(c) increases the grade of aggravated criminal trespass from a Class B misdemeanor to a Class A misdemeanor if a person enters "a building of *any* hospital, . . . or public school" without the effective consent of the property owner. Tenn. Code Ann. § 39-14-406(c) (2015) (emphasis added); *see also State v. Lyons*, 802 S.W.2d 590, 591 (Tenn. 1990) (defendant convicted of criminal trespass for entering onto the grounds of a public school). Because the phrase "a building of any hospital" necessarily includes a building of a public hospital, the aggravated criminal trespass statute, when read along with *Ash*, implies that consent to enter a hospital building open to the public can be revoked. Thus, we conclude that an owner of property, including a building that is open to the public, can revoke its consent for a person to enter.

We determine that a retail store does not effectively consent to a banned person's entry into the store simply because that individual enters the store to carry on a commercial activity. Failure to detect or to even prosecute a criminal act, criminal trespass, does not prohibit enforcement or prosecution of subsequent criminal act. A retail store's failure to recognize a banned individual who enters its buildings does not amount to "assent in fact, whether express or apparent," for the banned individual to enter the retail store. *See* Tenn. Code Ann. § 39-11-106(a)(9).

- 17 -

CONCLUSION

We hold that Tennessee Code Annotated section 39-14-402 is not vague and that Defendant received fair warning that his conduct constituted burglary pursuant to Tennessee Code Annotated subsection 39-14-402(a)(3). We affirm the judgments of conviction.

_____
ROBERT L. HOLLOWAY, JR., JUDGE